# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ROBERT LUSTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:14-CV-00143 JAR |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Robert Luster's ("Luster") applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381 et seq.

### I. Background

On March 9, 2011, Luster filed applications for disability insurance and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381 et seq. (Tr. 132-144) The Social Security Administration ("SSA") denied Luster's application on April 12, 2011. (Tr. 75-76) He filed a timely request for a hearing before an administrative law judge ("ALJ") on April 28, 2011. (Tr. 84-88) Following a hearing, the ALJ issued a written decision on November 15, 2012, upholding the denial of benefits. (Tr. 13-28) Luster requested review of the ALJ's decision by the Appeals Council. (Tr. 12) On November 27, 2013, the Appeals Council denied Luster's request for review. (Tr. 1-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Luster filed this appeal on January 24, 2014. (Doc. 1) The Commissioner filed an Answer. (Doc. 9) Luster filed a Brief in Support of his Complaint. (Doc. 15) The Commissioner filed a Brief in Support of the Answer. (Doc. 20) Luster filed a Reply Brief. (Doc. 23)

## II. Decision of the ALJ

The ALJ determined that Luster meets the insured status requirements of the Social Security Act through September 30, 2011, and had not engaged in substantial gainful activity since October 1, 2009, the alleged onset date of disability. (Tr. 18) The ALJ found Luster had the severe impairments of degenerative disc disease, medullary nephrocalcinosis and asthma but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

After considering the entire record, the ALJ determined Luster has the residual functional capacity ("RFC") to perform light work, except that he should avoid concentrated exposure to temperature (heat) extremes, humidity, and lung irritants such as fumes, dusts and gases. (Tr. 19) The ALJ found Luster unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 24) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 25) Luster appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on July 2, 2012. The ALJ heard testimony from Luster and Robin Cook, Ph.D., a vocational expert. (Tr. 29-73)

2

### 1. Luster's testimony

Luster was 51 years old at the time of the hearing and living alone. (Tr. 35) His fiancée lives down the hall from him. (Tr. 35) He does not have a high school degree. (Tr. 44) He has been unable to maintain employment since he was hurt on the job in 1989. (Tr. 35)

Luster's counsel indicated Luster's health problems are degenerative disc disease, asthma, and medullary nephrocalcinosis. (Tr. 36) Luster experiences pain in his lower middle portion of his back. (Tr. 38) On a scale of 1 to 10, Luster rates his pain on average as a 4. (Id.) Pain pills and lying down makes his back feel better. (Id.) However, standing too long or doing too much walking makes it worse. (Id.) He reports being able to stand for 20 minutes to a half hour and being able to walk for about 15 minutes. (Tr. 39) He also indicates that he can only sit for 20 minutes to half an hour. (Tr. 38) After that, he has to stand to relieve the pressure. (Id.) He can carry a gallon of milk. (Tr. 39) He has slight difficulty bending forward. (Tr. 40) He also reports that his right side, in the front, swells when he does excessive walking. (Id.) He experiences this swelling daily. (Tr. 41) He has to lie down to make it go away. (Id.) He takes naps every day for about an hour, sometimes two. (Id.) He is unable to put on his own socks. (Id.)

Luster's counsel explained that medullary nephrocalcinosis involves excess calcium in the kidneys. (Tr. 37) He has trouble with his asthma when it is hot or humid. (Tr. 43) Pollen and dust also bothers his asthma. (Id.) At the time of the hearing, Luster had not smoked cigarettes for about a week. (Tr. 36)

He is unable to do any chores because of his pain. (Tr. 42) He sometimes is able to rinse out a dish but is not able to clean or mop the floors. (Tr. 41) He does not go to the grocery store. (Tr. 42) He leaves his home maybe twice a week for church and to sit outside. (Id.)

3

## 2. Testimony of Vocational Expert

Vocational expert, Robin Cook, Ph.D., testified regarding Luster's vocational history as follows. Luster has been a punch press operator, code 692.665-014, with a specific vocational preparation ("SVP") of 2 and classified by the Dictionary of Occupational Titles ("DOT") as medium work, a brake press operator, code 619.685-026, SVP of 4, semi-skilled work, medium, a forklift driver, code 921.683-050, SVP 3, semi-skilled work, medium, a dining room attendant, code 311.677-018, SVP 2, unskilled work, medium, an order clerk, clerical, code 249.362-026, SVP 4, semi-skilled work, sedentary, a stores, laborer, code 922.687-058, SVP 2, unskilled work, medium, and a welder, code 819.384-010, SVP 6, skilled work, medium. (Tr. 57-62) Based on the claimant's testimony, Cook classified the punch press operator as sedentary work, the forklift driver as light work, the dining room attendant as light work, the order clerk, clerical as light work, and the welding work as sedentary in one setting and light in the other. (Id.)

For hypothetical one, the ALJ asked Cook to assume a person with the same age, education, and work experience as Luster capable of performing medium work with the following limitations: avoid concentrated exposure to heat and humidity as well as moderate exposure to lung irritants – fumes, odors, dust, gases, and poorly ventilated areas. (Tr. 63) She determined that such a person would be able to perform Luster's previous jobs of dining room attendant and order clerk, clerical. (Id.) Such a person would also be able to perform other jobs such as kitchen helper, code 318.687-010, SVP of 2, medium work. There are 9,830 such positions locally and 504,280 nationally. (Tr. 66) In addition, such a person could perform the job of linen-room attendant, code 222.387-030, SVP of 2, medium. There are 364 such positions locally and 19,930 nationally. (Id.)

4

For the second hypothetical, the ALJ asked Cook to assume the same limitations from the first hypothetical but at the light exertional level. (Tr. 67) Cook determined that Luster could return to the order clerk, clerical position. (Id.) Such a person would also be able to work as an officer helper, code 239.567-010, SVP 2, light work. There are 1,910 such positions locally and 93,250 nationally. (Tr. 67-68) Such a person would additionally be able to work as a recreation aide, code 195.367-030. There are 4,460 such positions locally and 253,000 nationally. (Tr. 68) Such a person could also work as a data examination clerk, code 209.387-022, SVP of 3, sedentary. There are 1,127 locally and 48,833 nationally. (Id.) Finally, there is a charge account clerk position that a person could do, code 205.367-014, SVP of 2, sedentary, unskilled. There are 4,350 locally and 200,150 nationally. (Tr. 69)

Finally, the ALJ asked Cook if any of these light or sedentary jobs would allow for a sit/stand option every half hour. (Tr. 69) It was Cook's testimony that the order clerk, clerical should amenable to that but that the data examination clerk and the charge account clerk would be less amenable. (Tr. 70)

Luster's attorney then asked Cook to assume a hypothetical individual, same age, education, and past work experience as the claimant, who would require the ability to nap or lie down during the course of an eight-hour day for up to an hour during the day. (Tr. 70-71) Cook testified that such an individual would not be capable of any of Luster's past work. (Tr. 71) Cook further stated that in terms of reclining, that it is not something provided at the workplace, and as for the unscheduled breaks, if it is something that occurs in addition to the regular breaks, that it is not tolerated very well. (Id.)

**B.    Medical Records**

The ALJ summarized Luster's medical records at Tr. 19-23. Relevant medical records are discussed as part of the analysis.

**IV.   Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of

6

impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national

economy. Id. The Commissioner may refer to the Medical-Vocational Guidelines or "Grids," 20 CFR Part 404, Subpart P, Appendix 2,[1] to meet this burden. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

---

[1] The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir. 2012). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." Id. (quoting Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)).

8

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In his appeal of the Commissioner's decision, Luster raises two issues. First, Luster asserts that the ALJ erred in determining Residual Functional Capacity ("RFC") by failing to find additional limitations supported by the record arising out of his impairments, including those indicated by Dr. Sarwath Bhattacharya, by improperly analyzing the medical evidence, and by failing to give a sufficient explanation or sufficiently cite medical evidence (Doc. 15 at 9-16) Second, Luster argues that the ALJ erred in assessing his credibility by failing to make sufficiently specific findings regarding his testimony, or sufficiently apply the factors set forth in the applicable cases on this issue. (Id. at 16-20)

### A. RFC

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "RFC is assessed . . . based on all of the relevant evidence in the case record . . . ." SSR 96-8p, 1996 WL 374184, at *2. All of the relevant evidence in the case record includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that

9

addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).

Luster asserts that the ALJ's RFC determination is not supported by substantial evidence, resulting from an improper evaluation of the evidence and failure to include sufficient limitations arising from Luster's impairments, including those suggested by Dr. Bhattacharya. (Doc. 15 at 13) As a preliminary matter, the Court finds that Dr. Bhattacharya is not a treating source. Not all treating healthcare providers are "treating sources." A treating source is the claimant's own physician, psychologist or other acceptable medical source who provides the claimant, or has provided the claimant, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. Dr. Bhattacharya was not Luster's own physician; Luster saw her a single time, at the request of the state agency. (Doc. 15 at 4-5)

In weighing medical opinion evidence such as Dr. Bhattacharya's, the ALJ considers six factors. 20 C.F.R. § 404.1527(c). The first three factors analyze the doctor's treatment relationship with the claimant, including the length of treatment and the type of relationship, in order to determine whether the doctor is familiar enough with the claimant to justify assigning the opinion greater weight. Id. The other three factors consider whether the doctor supported his opinion with specific facts or evidence, whether the doctor's opinion is consistent with other evidence and opinions, and whether there are "other facts" including the doctor's familiarity with the claimant's case. Id. An ALJ need not explicitly address each of the factors. Derda v. Astrue, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011) (collecting cases).

Dr. Bhattacharya examined Luster on August 23, 2012 and subsequently completed a medical source statement. (Tr. 340-352) In her report, Dr. Bhattacharya concluded that Luster

10

could occasionally lift and carry up to 10 pounds, sit for 45 minutes at a time, stand for 20 minutes at a time, and walk one block. (Tr. 344-45) She also found that he could frequently reach (overhead), reach (all other), handle, finger, feel, push/pull and operate foot controls. (Tr. 346) Regarding Luster's posture, Dr. Bhattacharya reported that Luster could occasionally climb stairs and ramps, stoop, kneel, crouch, crawl, never climb ladders or scaffolds, and frequently balance. (Tr. 347) She noted several restrictions regarding Luster's exposure to environmental limitations, specifically that he could never tolerate exposure to operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, and extreme cold. (Tr. 348) She concluded that Luster could perform all of the listed activities on the form including shopping, using standard public transportation, and sorting, handling, or using paper/files. (Tr. 349)

The ALJ assigned Dr. Bhattacharya's opinion "no weight." (Tr. 20, 23) In so-doing, the ALJ found Dr. Bhattacharya's opinion inconsistent with other medical evidence in the record. The ALJ found the clinical examination and medical records suggested only mild limitation. (Tr. 23) Specifically, the ALJ noted inconsistencies including several emergency room visits where the claimant indicated no back pain or that the back pain would be quickly resolved. (Tr. 20) The ALJ also found Dr. Bhattacharya's report inconsistent with her own treatment notes. Dr. Bhattacharya's report indicated only "'mild tenderness' on the left with lateral flexion". (Tr. 23, 342) Further, at the examination, Luster exhibited full muscle strength in all groups, but refused to perform flexion/extension of the lumber spine. (Tr. 23, 342) The ALJ also found that Dr. Bhattacharya relied heavily on the subjective report of symptoms and limitations provided by the claimant. See Kirby v. Astrue, 500 F.3d 705 (8th Cir. 2007) ("The ALJ was entitled to give less weight to [the consulting physician's] opinion, because it was based largely on [the claimant's]

subjective complaints rather than on objective medical evidence.") The ALJ concluded that the limitations suggested by Dr. Bhattacharya were not supported by the clinical testing at the consultative examination. (Tr. 23) The Court finds that the ALJ properly discounted the assessment in Dr. Bhattacharya's report after finding it was not supported by other medical evidence in the record or by her own records, and relied heavily on the subjective report of the claimant. See Casey v. Astrue, 503 F.3d 687, 693-94 (8th Cir. 2007) (finding the ALJ properly discounted the opinion of a consulting examiner when it relied largely on the claimant's subjective report and was inconsistent with the objective medical evidence).

Luster additionally asserts that the ALJ supported her RFC determination with her own medical conclusions about the evidence, not objective medical evidence. (See Doc. 15 at 10-11, 13, 15-16) Luster specifically points to the ALJ's observation that,

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature.

(Tr. 22) Luster also details several parts of the record that detract from the ALJ's decision at step four. (Doc. 15 at 14-15; Doc. 23 at 1-3) If the ALJ had stopped with this canned language alone, the Court might have found Luster's argument persuasive. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) ("[A] claimant's residual functional capacity is a medical question. Some medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.") (internal citations and quotations omitted) However, that is not the case. Not only

12

did the ALJ provide a narrative of the sparse medical record[2] (Tr. 22), she also made detailed findings regarding both his back pain and his asthma. Specifically the ALJ found that for his back pain, Luster was given medication and prescribed physical therapy. She also noted that the record does not reflect that Luster ever attended therapy. (Tr. 22, 246) She further observed that Luster did not specify any particular complaint about his back on several occasions. (Tr. 22) As for his asthma, the ALJ noted that inhalers controlled Luster's asthma and that he continued to smoke against the advice of physicians to quit. (Tr. 22) Luster argues that "the ALJ cited no medical evidence that smoking cessation would have altered [his] back pain or medullary nephrocalcinosis . . . ." (Doc. 15 at 16) This point is irrelevant as the ALJ's discussion of Luster's smoking directly relates to his asthma. Accordingly, the Court finds the ALJ's RFC determination supported by substantial evidence.

## B. Credibility

Luster next asserts that the ALJ erred in assessing Luster's credibility because she failed to make sufficiently specific findings regarding his testimony or sufficiently apply the required factors. (Doc. 15 at 16-19) "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler,

---

[2] Luster visited the Emergency Room 5 times, on August 14, 2009 (Tr. 240-252), June 9, 2010 (Tr. 224-239), November 8, 2010 (Tr. 256-289), and June 8, 2011 (Tr. 304-320). Of those 5 visits, one was a result of a spider bite. He also very sporadically visited physicians; the record reflects 5 visits over the course of approximately 3 years, not including that of Dr. Bhattacharya (Tr. 290-297, 300-303, 320-336).

13

739 F.2d 1320, 1322 (8th Cir. 1984). "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). The ALJ does not have to explicitly discuss each factor; "[i]t is sufficient if he acknowledges and considers [the] factors before discounting a claimant's subjective complaints." Goff, 421 F.3d at 791.

Here, the ALJ discredited Luster's subjective complaints because they conflicted with the objective medical evidence. The ALJ found Luster's medical treatment infrequent and essentially routine and/or conservative in nature. (Tr. 22) As discussed in more detail above, the medical evidence supports this conclusion. Additionally, the absence of an objective medical basis to support the degree of subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). See also Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is a factor an ALJ may consider). The ALJ similarly discredited Luster's statements regarding his activities of daily living. (Tr. 23) Specifically, she found that they could not objectively verify with any reasonable degree of certainty and, given the "relatively weak medical evidence", it would be difficult to attribute the limitations to Luster's medical condition as opposed to other reasons. (Tr. 23) Furthermore, the ALJ found Luster's credibility weakened because he made inconsistent statements about his smoking and the treatment records did not indicate that the Luster sought help with smoking cessation despite multiple suggestions to stop. (Tr. 22) Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) (holding that "the ALJ appropriately considered [plaintiff]'s failure to stop smoking in his credibility determination" where "there [was] no dispute that smoking has a direct impact on [plaintiff]'s pulmonary impairments").

14

Accordingly, in a manner consistent with and as required by Polaski, the ALJ considered Luster's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from his credibility. Because the ALJ's determination not to credit Luster's subjective complaints is supported by good reasons and substantial evidence, the Court defers to her determination. Cobb v. Colvin, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (citing McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013); Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Goff, 421 F.3d at 793).

## VI. Conclusion

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 31st day of January, 2015.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE